IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ATHENS DIVISION

CHRISTOPHER SEARS,              :
                               :
        Plaintiff,             :
                               :
v.                             :
                               :        No. 3:20-CV-86-CAR
JONATHAN BRADLEY and           :
STACY JARRARD,                 :
                               :
        Defendants.            :
_____ :

## ORDER ON DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT

Plaintiff Christopher Sears ("Sears") asserts various claims under 42 U.S.C. § 1983

alleging Georgia State Patrol Trooper Jonathan Bradley ("Trooper Bradley") Sheriff Stacy

Jarrard ("Sheriff Jarrard") violated his First, Fourth, and Fourteenth Amendment rights.[1]

Currently before the Court are Defendants' Motions for Summary Judgment.[2] Having

considered the record, the parties' briefs, and applicable law, Trooper Bradley's Motion

for Summary Judgment [Doc. 36] is **GRANTED in part** and **DENIED in part**. Specifically,

the Court **GRANTS** summary judgment on Sears' unlawful stop, detention, malicious

prosecution, First Amendment, and Fourteenth Amendment claims, and **DENIES**

---

[1] *See generally*, Pl.'s Amend. Comp. [Doc. 8].
[2] The Motions seek summary judgment on Plaintiff's remaining claims after the Court granted in part Defendants' motions to dismiss. *See* Order granting in part and denying in part Defendants' Motions to Dismiss. [Doc. 20].

summary judgment on Sears' unlawful search and arrest claims. Sherriff Jarrard's Motion for Summary Judgment [Doc. 37] is **GRANTED**.

## BACKGROUND

On June 26, 2018, Georgia State Patrol ("GSP") Lieutenant Anthony Coleman[3] ("Lt. Coleman") authorized a roadblock to occur on June 29, 2018 at 6:45 PM at the intersection of Nimblewill Church Road and US Forestry 28-1 in Lumpkin County, Georgia.[4] Pursuant to GSP Policy, Lt. Coleman completed a roadblock supervisor initiation approval form and a roadblock final report.[5] The roadblock initiation form states the roadblock was authorized for the primary purpose of improving driver safety and to specifically perform routine traffic checks for driver's license, insurance, and registration verification; seatbelt compliance; driver impairment; and vehicle fitness and safety compliance.[6] Thirteen GSP troopers were assigned to the roadblock.[7] GSP troopers met at the Lumpkin County Jail for briefings before the roadblock.[8] While Sheriff Jarrard described his office as a "backup source or an assisting source," neither Sheriff Jarrard nor any Lumpkin County Sherriff's officer participated in the roadblock.[9] The roadblock was planned,

---

[3] The Court notes at the time of the roadblock, Lt. Coleman was a sergeant with GSP, but has since been elevated to lieutenant. For the purposes of these Motions, the Court will refer to Lt. Coleman by his current rank.

[4] *See* Declaration of Anthony Coleman ("Coleman Declaration"), [Doc. 36-4] at p. 3, 9.

[5] *See Id*. at p. 2, 5-10.

[6] *Id*. at p. 9.

[7] *Id*. at p. 10.

[8] Deposition of Stacy Jarrard ("Jarrard Depo."), [Doc. 42] at 36:18-37:8, Deposition of Anthony Coleman ("Coleman Depo."), [Doc. 41] at 33:14-34:16.

[9] Jarrard Depo., [Doc. 42] at 40:12-41:22; Coleman Declaration, [Doc. 36-4].

effectuated, and conducted by GSP. The roadblock resulted in the issuance of twenty-three citations, five non-DUI custodial arrests, and two DUI arrests—one of whom was Sears.[10]

On June 29, 2018, Sears attended the Rainbow Gathering, an annual "primitive camping" event in the Chattahoochee National Forest.[11] While driving back to his friend's house after leaving the Rainbow Gathering, Sears was stopped by Trooper Bradley at the roadblock.[12] Trooper Bradley is POST certified and has received training in Standardized Field Sobriety as well as ARIDE—a training on how to detect certain drugs and the effects those drugs have on individuals.[13] Trooper Bradley participated in a DUI "refresher training" in 2017.[14]

During his initial interaction with Sears, Trooper Bradley contends he observed Sears "had blood shot watery eyes," "his speech was slow and slurred," and he "smelled the strong odor of marijuana coming from the vehicle."[15] Sears denied having any marijuana.[16] Trooper Bradley then ordered Sears out of the vehicle, and GSP troopers searched his vehicle based on the smell of marijuana. During the search, Trooper Bradley

---

[10] Coleman Declaration, [Doc. 36-4] at p. 10.
[11] Pl.'s Amend. Comp., [Doc. 9] at p. 3.
[12] Deposition of Christopher Sears ("Sears Depo."), [Doc. 39] at 37:3-38:8.
[13] Declaration of Jonathan Bradley ("Bradley Declaration"), [Doc. 36-3] at p. 2.
[14] *Id.*
[15] *Id.* at p. 6.
[16] Sears Depo., [Doc. 39] at 38:9-12.

located a pill bottle labeled San Pedro tea, which contained capsules of San Pedro tea concentrate.[17] No marijuana was found in the vehicle.[18]

Sears consented to a standardized field sobriety test ("SFST") which Trooper Bradley administered.[19] The SFST was captured on GSP dash-cam footage included in the record.[20] The SFST consisted of four tests: the horizontal gaze nystagmus ("HGN") test, the walk and turn test, the one leg stand test, and the Romberg test.[21] At the conclusion of the SFST, Trooper Bradley asked Sears what illegal substances he had taken that day.[22] Sears admitted to smoking marijuana earlier in the day.[23] Trooper Bradley concluded Sears was under the influence and arrested Sears for possession of a controlled substance and driving under the influence.[24] Trooper Bradley read Sears the Georgia implied consent notice for suspects over the age of twenty-one.[25] Sears refused a blood test and was transported to the Lumpkin County detention center.[26]

---

[17] San Pedro tea is a hallucinogen made from mescaline, which is extracted from psychoactive cacti. *Peyote and Mescaline*, United States Drug Enforcement Administration, Last Accessed: March 1, 2023. https://www.dea.gov/factsheets/peyote-and-mescaline.

[18] Bradley Declaration, [Doc. 36-3]; Exhibit C, Lumpkin County Superior Court Order Granting Sears' Motion to Suppress ("Suppression Order"), [Doc. 10-4].

[19] Bradley Declaration, [Doc. 36-3]; Deposition of Jonathan Bradley ("Bradley Depo."), [Doc. 40] at 37:21-38:4.

[20] *See generally* Defendant Jarrard's Motion to Dismiss, Exhibit A ("Dashcam Video") [Doc. 10-2].

[21] *See generally Id.*; Bradley Declaration, [Doc. 36-3] at p. 6.

[22] Dashcam Video, [Doc. 10-3] at 8:31-9:21.

[23] *Id.*

[24] *Id.*

[25] *Id.* at 9:22-10:55.

[26] *Id.* at 10:55-11:43; Bradley Declaration, [Doc. 36-3] at p. 6; Sears Depo. [Doc. 39] at 49:7-50:21.

During the resulting criminal proceedings in state court, Sears moved to suppress the seizure of the San Pedro tea. The Superior Court of Lumpkin County granted the motion finding: (1) the State did not meet its burden of proving that the challenged stop was reasonable under the totality of the circumstances; (2) Trooper Bradley was not credible as to the odor of marijuana being present in any degree to justify a search of Sears' vehicle; and (3) there was objectively no probable cause to believe Sears was an impaired driver at the time he was arrested (the "Suppression Order").[27] The court based its findings, in part, on the lack of marijuana found in the vehicle, inconsistencies in Trooper Bradley's report, testimony, and video footage, as well as statements the court concluded were "demonstrably false."[28]

Sears originally filed this action in the Superior Court of Franklin County, Georgia.[29] Defendants timely removed to this Court pursuant to the Court's federal question jurisdiction.[30] Defendants' Motions for Summary Judgment on Sears' remaining claims are now ripe for ruling.

## LEGAL STANDARD

Summary judgment is proper if the movant "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of

---

[27] Suppression Order, [Doc. 10-4].
[28] *Id*.
[29] Notice of Removal, p. 1 [Doc. 1].
[30] *Id*.

law."[31]  The moving party "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact" and that entitles it to a judgment as a matter of law.[32]  If the moving party discharges this burden, the burden then shifts to the nonmoving party to go beyond the pleadings and present specific evidence showing that there is a genuine issue of material fact.[33]

The Court must view the facts, and any reasonable inferences drawn from those facts, in the light most favorable to the party opposing the motion.[34]  "The inferences, however, must be supported by the record, and a genuine issue of material fact requires more than 'some metaphysical doubt as to the material facts.'"[35]  In cases where opposing parties tell different versions of the same events, and one is "blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts."[36]  A disputed fact will preclude summary judgment only "if the dispute might affect the outcome of the suit under the governing law."[37]  "The court may

---

[31] Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

[32] *Celotex*, 477 U.S. at 323 (internal quotation marks omitted).

[33] *See* Fed. R. Civ. P. 56(e); *see also Celotex*, 477 U.S. at 324.

[34] *Penley v. Eslinger*, 605 F.3d 843, 848 (11th Cir. 2010); *Welch v. Celotex Corp.*, 951 F.2d 1235, 1237 (11th Cir. 1992).

[35] *Logan v. Smith*, 439 F. App'x 798, 800 (11th Cir. 2011) (quoting *Penley*, 605 F.3d at 848).

[36] *Pourmoghani-Esfahani v. Gee*, 625 F.3d 1313, 1315 (11th Cir. 2010) (per curiam) (quoting *Scott v. Harris*, 550 U.S. 372, 380 (2007)).

[37] *Penley*, 605 F.3d at 848.

not resolve any material factual dispute, but must deny the motion and proceed to trial

if it finds that such an issue exists."[38]

## DISCUSSION

Sears brings claims under § 1983 against Sheriff Jarrard and Trooper Bradley in

their individual capacities. Sears alleges Sheriff Jarrard violated his First and Fourth

Amendment rights and Trooper Bradley violated his First, Fourth, and Fourteenth

Amendment rights. Section 1983 provides a private cause of action against those who,

under color of law, deprive a citizen of the United States of "any rights, privileges, or

immunities secured by the Constitution and laws."[39]  A plaintiff may bring a § 1983 claim

against a person in his individual or official capacity, or against a governmental entity.[40]

### I.  Fourth Amendment Claims

Sears claims Trooper Bradley violated his Fourth Amendment right to be free from

unlawful stop, detention, search, arrest, and malicious prosecution, and Sheriff Jarrard

violated his Fourth Amendment right to be free from unlawful stop.

#### A.  Unlawful Stop Claims

Sears contends he was unlawfully stopped at an unconstitutional roadblock

established by Sheriff Jarrard and enforced by Trooper Bradley, and collateral estoppel

---

[38] *Envtl. Def. Fund v. Marsh*, 651 F.2d 983, 991 (5th Cir. 1981).  In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.
[39] 42 U.S.C. § 1983.
[40] *Busby v. City of Orlando*, 931 F.2d 764, 772 (11th Cir. 1991).

prevents Defendants from challenging the findings in the Suppression Order. Sears'

arguments fail, and his reliance on the Suppression Order is misplaced.

1. Collateral Estoppel

Sears argues the Suppression Order triggers collateral estoppel and precludes

Defendants from challenging the findings and conclusions contained in the Order. While

the Court may consider the Suppression Order as evidence, the order is neither binding

nor triggers collateral estoppel. "Congress has specifically required all federal courts to

give preclusive effect to state-court judgments whenever the courts of the State from

which the judgments emerged would do so."[41] Under Georgia law:

> [a] judgment of a court of competent jurisdiction shall be conclusive
> between the same parties and their privies as to all matters put in issue or
> which under the rules of law might have been put in issue in the cause
> wherein the judgment was rendered until the judgment is reversed or set
> aside.[42]

Georgia law "retains the old 'mutuality' rule . . . requiring an 'identity of parties or their

privies' to bar a second lawsuit."[43] Issue preclusion does not apply to Sears' claims because

there is no identity of parties or their privies in the state court criminal case and this case.

The criminal case, *State of Georgia v. Christopher Sears*, Case No. 18-CR-573-JP, was

between the State of Georgia and Sears. Neither Trooper Bradley nor Sherriff Jarrard were

---

[41] *Allen v. McCurry*, 449 U.S. 90, 96 (1980) (citing 28 U. S. C. § 1738).

[42] O.C.G.A. § 9-12-40.

[43] *Webb v. Ethridge*, 849 F.2d 546, 549 (11th Cir. 1988).

parties to the criminal case.[44] There is also no privity between the Defendants and the State of Georgia. Trooper Bradley and Sheriff Jarrard "are being sued in their individual capacity[ies] in this [case], and their personal interests, which were not at stake in the criminal proceeding, differ from [Georgia's] interests."[45] Thus, collateral estoppel does not apply.

### 2.   Constitutionality of the Roadblock

Sears claims the roadblock was unconstitutionally established for the improper purpose of targeting members of the Rainbow Gathering. "A vehicle stop at a highway checkpoint is a seizure within the meaning of the Fourth Amendment, which requires that a seizure by the government be reasonable."[46] The Supreme Court has

> never approved a checkpoint program whose primary purpose was to detect evidence of ordinary criminal wrongdoing. Rather, our checkpoint cases have recognized only limited exceptions to the general rule that a seizure must be accompanied by some measure of individualized suspicion. We suggested in [*Delaware v. Prouse*] that we would not credit the "general interest in crime control" as justification for a regime of suspicionless stops. Consistent with this suggestion, each of the checkpoint programs that we have approved was designed primarily to serve purposes

---

[44] *See Farred v. Hicks*, 915 F.2d 1530, 1534 (11th Cir. 1990). ("[A]lthough [the plaintiff] was a party in the state criminal proceeding and is a party in this civil case, neither the police officers nor the [head of the police department] were parties to the criminal case.").

[45] *Kinslow v. Ratzlaff*, 158 F.3d 1104, 1106 (10th Cir. 1998); see also *Santhuff v. Bloxom*, No. 1:07-CV-1616-TWT, 2009 U.S. Dist. LEXIS 151685, at *13 (N.D. Ga. Feb. 19, 2009).

[46] *United States v. Whitehead*, 567 F. App'x 758, 765 (11th Cir. 2014) (citing *City of Indianapolis v. Edmond*, 531 U.S. 32, 37, 40 (2002)).

closely related to the problems of policing the border or the necessity of ensuring roadway safety.[47]

Georgia courts have similarly required roadblocks to be "implemented to ensure roadway safety rather than as a constitutionally impermissible pretext aimed at discovering general evidence of ordinary crime."[48] The Georgia Supreme Court noted that "[a]lthough a roadblock cannot be used as a subterfuge to detain citizens for the purpose of searching their automobiles, a momentary stop of a traveling citizen to perform the license checks or to check the present fitness of a car or driver for further driving is permissible."[49]

But, while "a checkpoint program whose primary purpose was to detect evidence of ordinary criminal wrongdoing violates the Fourth Amendment,"[50] the Eleventh Circuit has held that "a state may conduct a mixed-motive roadblock as long as one purpose presented for the roadblock could validly justify the roadblock, even if no roadblock would have been put in place but for the state's [other motive]."[51]

To determine if a checkpoint satisfies the constitutional requirements of the Fourth Amendment, courts are instructed to "consider whether the government's operation—as planned or in the reality of its performance—violated plaintiff's constitutional rights; that

---

[47] *Edmond*, 531 U.S. at 41-42.
[48] *Ross v. State*, 257 Ga. App. 541, 542 (2002).
[49] *Lafontaine v. State*, 269 Ga. 251, 253 (1998) (overruled in-part on other grounds by *McCoy v. State*, 303 Ga. 551, 556 (2018)).
[50] *Delaware v. Prouse*, 440 U.S. 648, 663 (1979).
[51] *Merrett v. Moore*, 58 F.3d 1547, 1551 (11th Cir. 1995).

is, whether [the checkpoint was] reasonable in the light of the state's interest in conducting the roadblocks, the effectiveness of the operation in promoting that interest, and the level of intrusion on the individual's privacy caused by the checkpoints."[52]

Lt. Coleman implemented the roadblock for the purpose of improving driver safety and to specifically perform routine traffic checks for driver's license, insurance, and registration verification; seatbelt compliance; driver impairment; and vehicle fitness and safety compliance.[53] The checkpoint advanced an important state interest, maintaining traffic safety, which is "beyond the normal need for law enforcement."[54] Additionally, the roadblock was effective in promoting the state's interest in maintaining traffic safety. Officers stopped each vehicle that passed through the roadblock and reported the delay to motorists was minimal.[55] The roadblock resulted in the issuance of twenty-three citations, five non-DUI custodial arrests, and two DUI arrests.[56] The Court finds the severity of the intrusion of the roadblock on Plaintiff's Fourth Amendment

---

[52] *United States v. Regan*, 218 F. App'x 902, 904 (11th Cir. 2007) (quoting *Merrett*, 58 F.3d at 1551).

[53] Georgia Department of Public Safety Roadblock Supervisor Initiation Approval Form ("Roadblock Initiation Form"), [Doc. 36-4] at p. 9.

[54] *Edmond*, 531 U.S. at 37; *see also Delaware*, 440 U.S. at 658 (1979) ("We agree that the States have a vital interest in ensuring that only those qualified to do so are permitted to operate motor vehicles, that these vehicles are fit for safe operation, and hence that licensing, registration, and vehicle inspection requirements are being observed."); *Merrett*, 58 F.3d at 1550 ("That the state had the authority to conduct roadblocks to check drivers' license and vehicle registration is also undisputed.").

[55] Georgia Department of Public Safety Roadblock Final Report ("Roadblock Final Report"), [Doc. 36-4] at p. 10.

[56] *Id.*

rights and effectiveness of the operation weigh in favor of the constitutionality of the roadblock.[57] Thus, the roadblock was constitutional.

Plaintiff's allegation that the roadblock was established for the unarticulated purpose of targeting members of the Rainbow Gathering is simply conjecture and unsupported by the record. Lt. Coleman articulated four constitutionally valid purposes for the roadblock. Because "a state may conduct a mixed-motive roadblock as long as one purpose presented for the roadblock could validly justify the roadblock, even if no roadblock would have been put in place but for the state's [other motive],"[58] the Court concludes the roadblock comported with the requirements of the Fourth Amendment. Thus, assuming Trooper Bradley and Sherriff Jarrard are the proper defendants for Sears' unlawful stop claims, both are entitled to summary judgment.

B. Unlawful Arrest Claim

The Court concludes the record contains evidence that contradicts Trooper Bradley's findings and credibility sufficient to create a genuine issue of material fact as to whether Trooper Bradley smelled marijuana and fabricated evidence to support a finding of arguable probable cause or probable cause to believe Sears was impaired. The Court

---

[57] *Michigan Dep't of State Police v. Sitz*, 496 U.S. 444, 450-51, 455 (1990), (finding the "initial stop of each motorist passing through a [sobriety] checkpoint and the associated preliminary questioning and observation by checkpoint officers" to be "consistent with the Fourth Amendment."); *United States v. Smith*, 694 F. Supp. 2d 1242, 1256 (M.D. Ala. 2009), *aff'd* 481 F. App'x 540 (11th Cir. 2012) (finding roadblock that had the primary purpose of conducting license, insurance and registration checks was constitutional).
[58] *Merrett,* 58 F.3d at 1551.

"cannot allow a probable cause determination to stand principally on the unsupported statements of interested officers, when those statements have been challenged and countered by objective evidence."[59] The findings in Trooper Bradley's report have been sufficiently challenged and countered by objective evidence including the lack of marijuana in the car, the video footage of the SFST, and the temporal gap between when Sears admitted to having smoked marijuana and his arrest. Furthermore, given the standard of review at the summary judgment stage, the Court must accept Sears' version of the disputed material facts as true.[60]

Sears contends Trooper Bradley arrested him without probable cause. Trooper Bradley argues he is entitled to qualified immunity. The Court disagrees. Here, a genuine issue of material fact exists as to whether Trooper Bradley had even arguable probable cause to arrest Sears. Thus, Trooper Bradley is not entitled to qualified immunity, and summary judgment must be denied.

### 1.  *Qualified Immunity*

Arrests qualify as seizures under the Fourth Amendment.[61] "Where a police officer lacks probable cause to make an arrest, the arrestee has a claim under section 1983 for

---

[59] *Kingsland v. City of Miami*, 382 F.3d 1220, 1227 (11th Cir. 2004), *abrogated on other grounds by Nieves v. Bartlett*, 139 S.Ct. 1715 (2019).

[60] *See Rowe v. City of Fort Lauderdale*, 279 F.3d 1271, 1279 n.9 (11th Cir. 2002) (stating that a court must accept the non-movant's version of disputed facts as true for purposes of summary judgment).

[61] *Ashcroft v. Al-Kidd*, 563 U.S. 731, 735 (2011); *Manuel v. City of Joliet, Ill.*, 580 U.S. 357 (2017).

false imprisonment based on a detention pursuant to that arrest."[62] Similarly, "[a] warrantless arrest without probable cause violates the Fourth Amendment and forms a basis for a section 1983 claim."

"Qualified immunity offers complete protection for government officials sued in their individual capacities if their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."[63] "Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments about open legal questions."[64] When properly applied, "it protects all but the plainly incompetent or those who knowingly violate the law."[65] When an officer invokes qualified immunity, the initial burden is on the official to show that "he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred.[66] "Once the defendant establishes that he was acting within his discretionary authority, the burden shifts to the plaintiff to show that qualified immunity is not appropriate."[67]

Sears does not contest Trooper Bradley was acting within his discretionary authority, so he must show that the alleged constitutional violation was "clearly established."[68] "The contours of the right must be sufficiently clear that a reasonable

---

[62] *Ortega v. Christian*, 85 F.3d 1521, 1525 (11th Cir. 1996).

[63] *Vinyard v. Wilson*, 311 F.3d 1340, 1346 (11th Cir. 2002) (internal quotation marks omitted).

[64] *Ashcroft*, 563 U.S. at 743.

[65] *Id.*

[66] *Lee v. Ferraro*, 284 F.3d 1188, 1194 (2002).

[67] *Id.*

[68] *Pearson*, 555 U.S. at 232.

official would understand that what he is doing violates that right."[69] The Court may first determine whether the alleged violation was "clearly established" without resolving whether there was an actual constitutional violation.[70]

For the purposes of qualified immunity "in wrongful arrest cases, [the Eleventh Circuit has] defined the 'clearly-established' prong as an 'arguable probable cause' inquiry."[71] This is "a more lenient standard than probable cause."[72] The standard is an objective one and does not include an inquiry into the officer's subjective intent or beliefs.[73] Arguable probable cause exists where "reasonable officers in the same circumstances and possessing the same knowledge as the Defendants could have believed that probable cause existed to arrest Plaintiff."[74] "Indeed, it is inevitable that law enforcement officials will in some cases reasonably but mistakenly conclude that probable cause is present, and in such cases those officials should not be held personally liable."[75] Whether an officer had arguable probable cause "depends on the elements of the alleged crime and the operative fact pattern."[76]

---

[69] *Anderson v. Creighton*, 483 U.S. 635, 640 (1987).

[70] *Pearson*, 555 U.S. at 236.

[71] *Moran v. Cameron*, 362 Fed. Appx. 88, 93 (11th Cir. 2010).

[72] *Id.* at 94.

[73] *Rushing v. Parker*, 599 F.3d 1263, 1266 (11th Cir. 2010).

[74] *Grider v. City of Auburn, Ala.*, 618 F.3d 1240, 1257 (11th Cir. 2010).

[75] *Brescher v. Von Stein*, 904 F.2d 572 at 579 (11th Cir. 1990) (quotation marks and ellipses omitted); *see also Hunter v. Bryant*, 502 U.S. 224, 227 (1991) ("Even law enforcement officials who reasonably but mistakenly conclude that probable cause is present are entitled to immunity."); *Montoute*, 114 F.3d at 184 ("Thus, the qualified immunity standard is broad enough to cover some 'mistaken judgment [ ]'").

[76] *Grider*, 618 F.3d at 1257.

15

A genuine issue of material fact exists as to whether Trooper Bradley had arguable probable cause to arrest Sears. Thus, Trooper Bradley is not entitled to qualified immunity. The Eleventh Circuit has distinguished good faith mistakes from conduct which creates factual issues as to an officer's honesty and credibility.[77] But Sears contends Trooper Bradley made several deliberately false statements and fabricated smelling the odor of marijuana. Sears' contention is not pure conjecture; the Court, like Judge Parks, concludes many of Trooper Bradley's findings are contradicted by video evidence.[78] Here, "if the plaintiff's version of the facts is true, the defendants' conduct is patently objectively unreasonable, and no reasonable public official would contend that such conduct was lawful."[79]

The Eleventh Circuit has held qualified immunity "does not offer protection if an official knew or reasonably should have known that the action he took within his sphere of official responsibility would violate the constitutional rights of the plaintiff."[80] "Plainly, an arrest without probable cause violates the right to be free from an unreasonable search

---

[77] *See Kingsland*, 382 F.3d at 1233 (comparing *Kingsland* with *Post*, 7 F.3d 1552 (11th Cir. 1993) "The agents in Post claimed that they counted people in excess of the restaurant's maximum capacity, but in effect they erroneously counted employees who were not to be counted. We held that a "mistaken but reasonable count" was sufficient for the agents to establish arguable probable cause. *Id.* However, the agents in Post simply made a good faith mistake, whereas here, the officers' conduct creates factual issues as to their honesty and credibility.").

[78] *See generally*, Suppression Order, [Doc. 10-4].

[79] *Id.*

[80] *Holmes v. Kucynda*, 321 F.3d 1069 at 1077 (11th Cir. 2003).

under the Fourth Amendment."[81] Likewise, "falsifying facts to establish probable cause is patently unconstitutional and has been so long before [Sears'] arrest in [2018]."[82] Indeed, "[t]he principles behind qualified immunity would be rendered meaningless if such immunity could be invoked to shelter officers who, because of their own interests, allegedly flout the law, abuse their authority, and deliberately imperil those they are employed to serve and protect."[83] Trooper Bradley was on notice that arrests without probable cause and manufacturing probable cause are both unconstitutional. The facts in the record, interpreted in the light most favorable to Sears, sufficiently allege a violation of his clearly established Fourth Amendment right to be free of warrantless searches and seizures.

Determining what happened during Sears' arrest on this disputed factual record is "exactly the sort of factual, credibility-sensitive task best left to the jury."[84] Without further factfinding, it is impracticable to conclude that arguable probable cause existed for Sears' arrest when it is unclear how much of the proffered evidence tending to support

---

[81] *Durruthy v. Pastor*, 351 F.3d 1080, 1088 (11th Cir. 2003) (citing *Redd v. City of Enterprise*, 140 F.3d 1378, 1382 (11th Cir. 1998)).

[82] *Kingsland*, 382 F.3d at 1332 (citing *Riley v. City of Montgomery*, 104 F.3d 1247, 1253 (11th Cir. 1997) ("It was well established in 1989 that fabricating incriminating evidence violated constitutional rights."); *Hinchman v. Moore*, 312 F.3d 198, 205-06 (6th Cir. 2002); *Hill v. McIntyre*, 884 F.2d 271, 275 (6th Cir. 1989)).

[83] *Kingsland*, 382 F.3d at 1234; *see also Butz v. Economou*, 438 U.S. 478, 506-07 (1978) ("It is not unfair to hold liable the official who knows or should know he is acting outside the law, and that insisting on an awareness of clearly established constitutional limits will not unduly interfere with the exercise of official judgment.").

[84] *Goldring v. Henry*, No. 19-13820, 2021 U.S. App. LEXIS 33621, at *26 (11th Cir. Nov. 12, 2021) (citing *Skop v. City of Atlanta*, 485 F.3d 1130, 1141 (11th Cir. 2007).

a finding of arguable probable cause was manufactured or misrepresented.[85] Thus, Trooper Bradley is not entitled to qualified immunity.

      *a. Constitutional Violation*

Trooper Bradley's report states Sears "had blood shot watery eyes," "his speech was slow and slurred," he "smelled the strong odor of marijuana coming from [Sears'] vehicle," and thus, Trooper Bradley instructed Sears to exit the vehicle.[86] Sears argues Trooper Bradley did not smell marijuana, and the statements in his report are refuted by video evidence, testimony, the Suppression Order, and the absence of marijuana from the vehicle. Thus, Sears contends that there is a genuine issue of material fact. The Court agrees.

To establish a disputed fact, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts."[87] "[A] court need not entertain conclusory and unsubstantiated allegations of fabrication of evidence."[88] It is undisputed that the smell of marijuana may give an officer probable cause to believe that the suspect currently possesses marijuana.[89] Ordinarily, "[a]n officer's statement that he

---

[85] *Kingsland*, 382 F.3d at 1232.

[86] Bradley Declaration, [Doc. 36-3] at p.6.

[87] *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

[88] *Kingsland*, 382 F.3d at 1227.

[89] *See United States v. Cheeks*, 795 F. App'x 805, 811-12 (11th Cir. 2019) (finding probable cause based (in part) on the "odor of burnt marijuana," and noting that "[o]ur precedent makes clear that an officer's level of suspicion rises to the level of probable cause when he detects 'what he [knows] from his law enforcement experience to be the odor of marijuana'" (quoting *United States v. Tobin*, 923 F.2d 1506, 1512 (11th Cir. 1991))); *United States v. Session*, 649 F. App'x 821, 822 (11th Cir. 2016) (finding probable cause where the officer "detected a strong odor of burnt marijuana and observed that the occupants of the vehicle were extremely

smells marijuana should be taken as true, provided that there is no evidence as to the contrary or dispute as to the officer's credibility."[90] But here, as in *Kingsland*, the Court concludes the record contains evidence that contradicts Trooper Bradley's findings and credibility sufficient to overcome summary judgment. A reasonable jury could find Trooper Bradley either materially misrepresented or fabricated evidence to support the finding of probable cause.

Statements in Trooper Bradley's report are not supported—and at times directly contradicted—by video footage. Trooper Bradley stated that he observed Sears had "blood shot watery eyes, and his speech was slow and slurred."[91] But in over forty minutes of footage provided to the Court, there is no evidence of Sears' speech being slow or slurred. Indeed, throughout the entire encounter, Sears speaks coherently with a normal intonation and pace. Additionally, the video does not conclusively show Sears had "bloodshot, watery eyes."

Moreover, discrepancies between Trooper Bradley's report and video evidence of the SFST create genuine issues of material fact as to whether Trooper Bradley fabricated evidence to support a finding of probable cause and whether he had arguable probable cause to believe Sears was impaired. During the SFST, Trooper Bradley conducted four

nervous"); *United States v. Hamilton*, 299 F. App'x 878, 882 (11th Cir. 2008) (finding probable cause where the officers "smelled a strong odor of burnt marijuana as soon as [the suspect] rolled down his window").
[90] *Rogers v. City of Boca Raton*, No. 19-CIV-80293-MIDDLEBROOKS, 2019 U.S. Dist. LEXIS 221876, at *9 (S.D. Fla. Dec. 19, 2019).
[91] Bradley Declaration, [Doc. 36-3] at p.6.

tests: the HGN eye test, the walk and turn test, the one leg stand test, and the Romberg test.

Trooper Bradley stated he "observed 0 clues" of impairment during the HGN eye test.[92] As to the walk and turn test, although Trooper Bradley's report indicates Sears "started too soon," "was unable to maintain his balance during the instructional stage," "used his arms for balance, missed heel to toe on several steps, made an improper turn by not making it at all, and then he started walking backwards,"[93] video evidence calls these findings into question.[94] Six seconds after Trooper Bradley states "I want you to stay in this position until I tell you to do otherwise," Sears appears to adjust his footing once but otherwise does not appear to move. Although Sears did adjust his footing, the Court is skeptical a slight adjustment—mere seconds after Trooper Bradley's instruction— warrants a finding that Sears started too soon or was unable to maintain his balance.

---

[92] *Id*.

[93] *Id*.

[94] Dashcam Video, [Doc. 10-2] at 3:40-5:35.

Additionally, Trooper Bradley contends Sears "missed heel to toe on several steps," but the video recording only demonstrates Trooper Bradley stating "missed heel toe" once.[95]

Moreover, while Trooper Bradley correctly states Sears made an improper turn, a reasonable jury could conclude Sears' improper turn was the result of vague instructions rather than impairment. Trooper Bradley gave Sears the following instruction:

> What I want you to do is I want you to take nine heel to toe steps. I want you to leave your left foot planted. I want you to take a series of small steps, and I want you to take nine heel to toe steps back. Okay? Just like so. I am only going to take three, but I want you to take nine.[96]

Trooper Bradley then demonstrated three steps in each direction. Although Trooper Bradley did not walk backwards during his demonstration,[97] he never used the word turn in his instructions and only referenced "left foot planted and a series of small steps." During the test, Sears takes nine steps forward, appears confused, looks to Trooper Bradley, and states "back?" At the conclusion of the test, Trooper Bradley asks "did you understand all my instructions to you and the way I demonstrated? Did you understand everything I explained?" Sears appears to nod and then asks "did I get it wrong?" to which Trooper Bradley responds "no, I just…" before immediately transitioning to the next test. Considering the unclear instructions and discrepancies between Trooper

---

[95] *Id.* at 5:04.

[96] *Id* at 4:22-4:38.

[97] The turn in Bradley's demonstration occurs outside the view of the video footage, and thus, was not observed by the Court.

Bradley's report and video evidence, a jury could reasonably conclude the perceived clues of impairment resulted from unclear instructions rather than actual impairment.

Third, while Trooper Bradley contends Sears failed the one leg stand test—video evidence calls his findings into question.[98] Trooper Bradley instructed Sears on how to perform the one leg stand test, demonstrated the test, and instructed Sears to count out loud until he told Sears to stop.[99] Trooper Bradley's report indicates Sears "raised his arms for balance, and swayed side to side."[100] But the video shows Sears balanced on one leg with little to no movement for thirty-six seconds—during which he balanced on the side of a busy street, mere feet away from the distractions of actively flashing lights and an officer opening and closing the trunk of a patrol car.[101] A jury could reasonable conclude that Sears did not fail the third test or performed it with similar skill as Trooper Bradley did in his demonstration.

Fourth, video evidence contradicts Trooper Bradley's findings during the Romberg test.[102] Trooper Bradley instructed Sears to lean his head back as far as he could, close his eyes, estimate the passage of thirty (30) seconds, and, once Sears believed thirty seconds had passed, to raise his head and tell Trooper Bradley to stop. Trooper Bradley's report indicates Sears "estimated the passage of 30 seconds in 40 seconds. He also swayed

---

[98] Dashcam Video, [Doc. 10-3] at 5:36-7:04.
[99] *Id*.
[100] Bradley Declaration, [Doc. 36-3] at p.6.
[101] Dashcam Video, [Doc. 10-3] at 6:27-7:03.
[102] *Id*. at 7:04-8:15.

side to side, [and] had eyelid tremors in both eyes."[103] But video evidence shows Sears estimated thirty (30) seconds in twenty-nine (29) seconds.[104] Additionally, any movement was minimal. Thus, a jury could reasonably conclude Sears did not fail the Romberg test or that Bradley fabricated evidence to support a finding of probable cause.

Following the Romberg test, Trooper Bradley examined Sears' eyes and mouth, after which Sears stated, "I'm very uh […] I'm uh dehydrated from walking all day."[105] Trooper Bradley's report states Sears had reddening of the conjunctiva and raised taste buds.[106] Here, in light of other discrepancies in the report, a reasonable jury could find any perceived clues of impairment were due to dehydration rather than actual impairment.

After the SFST was complete, Trooper Bradley asked Sears what kind of illegal substances he had taken that day. Sears admitted he "smoked some weed" "several hours ago" "at the beginning of the day."[107] Bradley responded that based on his evaluation, and still smelling the odor of marijuana on Sears, he concluded Sears was "impaired on

---

[103] Bradley Declaration, [Doc. 36-3] at p.6.

[104] Dashcam Video, [Doc. 10-3] at 7:44-8:13.

[105] *Id*. at 8:20-8:28.

[106] Bradley Declaration, [Doc. 36-3] at p. 6.

[107] *See* Dashcam Video, [Doc. 10-3] at 8:32-9:08. The Court cannot discern the exact time Sears' stated he smoked marijuana. In his Deposition, Sears stated "It was sort of a wake and bake situation. I don't recall exactly what time, but it was early that morning." Sears Depo., [Doc. 39] at 35:14-15.

something today."[108] Trooper Bradley then placed Sears under arrest and read him the

Georgia implied consent notice for suspects over the age of twenty-one.[109]

Here, the Court cannot conclude the inconsistencies in Trooper Bradley's report

amount to good faith mistakes. Instead, the nature and prevalence of the inconsistencies

create factual issues as to Trooper Bradley's honesty and credibility.[110] Thus, a genuine

issue of material fact exists as to whether Trooper Bradley smelled marijuana or whether

the results of the SFST gave Trooper Bradley arguable probable cause to arrest Sears. The

Court notes that Sears has proffered no less evidence regarding the presence or absence

of a cannabis odor than Trooper Bradley has. Sears' word is merely countered by Trooper

Bradley's testimony. While Sears did admit to smoking marijuana earlier in the day, Sears

was arrested around 8:00 PM—a potentially significant temporal gap.[111] A reasonable jury

---

[108] Dashcam Video, [Doc. 10-3] at 8:31-9:21.

[109] *Id*. at 9:22-10:55.

[110] *See Kingsland*, 382 F.3d at 1233 (comparing *Kingsland* with *Post*, 7 F.3d 1552 "The agents in Post claimed that they counted people in excess of the restaurant's maximum capacity, but in effect they erroneously counted employees who were not to be counted. We held that a "mistaken but reasonable count" was sufficient for the agents to establish arguable probable cause. *Id.* However, the agents in Post simply made a good faith mistake, whereas here, the officers' conduct creates factual issues as to their honesty and credibility.").

[111] Bradley Declaration, [Doc. 36-3] at p. 5-6.

could conclude Sears' admission alone could not establish arguable probable cause or probable cause.

### b. *Clearly Established Law*

"Plainly, an arrest without probable cause violates the right to be free from an unreasonable search under the Fourth Amendment."[112] Likewise, "falsifying facts to establish probable cause is patently unconstitutional and has been so long before [Sears'] arrest in [2018]."[113] The Eleventh Circuit has held qualified immunity "does not offer protection if an official knew or reasonably should have known that the action he took within his sphere of official responsibility would violate the constitutional rights of the plaintiff."[114] Here, Bradley was on notice that manufacturing probable cause is unconstitutional. The facts in the record, interpreted in the light most favorable to Sears, sufficiently allege a violation of his clearly established Fourth Amendment right to be free of warrantless searches and seizures.

Because Trooper Bradley is not shielded by qualified immunity and genuine issues of material fact exist whether he had probable cause to arrest Sears, summary judgment is denied.

---

[112] *Durruthy v. Pastor*, 351 F.3d 1080, 1088 (11th Cir. 2003) (citing *Redd v. City of Enterprise*, 140 F.3d 1378, 1382 (11th Cir. 1998)).

[113] *Kingsland*, 382 F.3d at 1332 (citing *Riley*, 104 F.3d at 1253 ("It was well established in 1989 that fabricating incriminating evidence violated constitutional rights."); *Hinchman*, 312 F.3d at 205-06; *Hill*, 884 F.2d at 275).

[114] *Holmes v. Kucynda*, 321 F.3d 1069 at 1077 (11th Cir. 2003).

C.  Unlawful Search Claim

Sears contends Bradley unlawfully searched his vehicle without a warrant, consent, or probable cause. Because a genuine issue of material fact exists as to whether Trooper Bradley smelled marijuana to support a finding of arguable probable cause, he is not entitled to qualified immunity.

The Fourth Amendment generally requires an officer to have a warrant supported by probable cause to search an individual's personal property.[115] But this requirement is subject to several well-established exceptions—including the "automobile exception." The Supreme Court has held that the Fourth Amendment permits the warrantless search of a car where (1) the car is "readily mobile" and (2) "probable cause exists to believe [the car] contains contraband."[116] "For purposes of the automobile exception, probable cause exists when 'there is a fair probability that contraband or evidence of a crime will be found in the vehicle under the totality of the circumstances.'"[117]

First, Bradley contends he was not the officer who searched Sears' vehicle. While the video evidence submitted to the Court does not show the search of Sears' vehicle, Trooper Bradley contends "it is obvious that the car was searched by troopers other than

---

[115] *See United States v. Wilson*, 979 F.3d 889, 910 (11th Cir. 2020).

[116] *Maryland v. Dyson*, 527 U.S. 465, 467 (1999); *Carroll v. United States*, 267 U.S. 132, 153-56 (1925) (upholding the warrantless search of a car that officers had probable cause to believe contained illegal liquor).

[117] *Watkins v. Johnson*, 853 F. App'x 455, 462 (11th Cir. 2021) (quoting *United States v. Delva*, 922 F.3d 1228, 1243 (11th Cir. 2019)).

Bradley, as Bradley was engaged with Sears [and he] cannot be liable for others' alleged misconduct."[118]

The Court disagrees. The video does not depict the search of Sears' car, which took place before his arrest. Moreover, Bradley attested to conducting the search in his deposition and incident report. In his incident report, Bradley states, "I then conducted a vehicle search where I found a pill container which stated on the bottle San Pedro tea."[119] Likewise, in his deposition, Bradley stated, "I found San Pedro which is an illegal substance inside the vehicle."[120] Furthermore, Sears testified Bradley was "part of the group" that searched his car.[121] Sears alleges, and Bradley's sworn statements support, that he participated in the search of Sears' vehicle. At this stage, the Court must accept Sears' version of disputed facts as true.[122]

Second, Bradley argues he had arguable probable cause to search Sears' vehicle, and he is therefore entitled to qualified immunity. But, as previously discussed, there is a genuine issue of material fact as to whether Bradley smelled marijuana to justify the search of Sears' vehicle. Thus, without the smell of marijuana, the Court cannot conclude arguable probable cause existed for Trooper Bradley to believe Sears' vehicle contained

---

[118] Bradley's Motion for Summary Judgment, [Doc. 36-1], FN 5 at p. 9-10.
[119] Bradley Declaration, [Doc. 36-3] at p.6 (emphasis added).
[120] Bradley Depo., [Doc. 40] at 35:7-23 (emphasis added).
[121] Sears Depo., [Doc. 39] at 39:15-40:6.
[122] *Rowe*, 279 F.3d at 1279 n.9 (11th Cir. 2002) (stating that a court must accept the non-movant's version of disputed facts as true for purposes of summary judgment).

contraband. Furthermore, accepting Sears' version of disputed facts as true, it is clearly established that "falsifying facts to establish probable cause is patently unconstitutional and has been so long before [Sears'] arrest in [2018]."[123] Therefore, Trooper Bradley is not entitled to qualified immunity on Sears' unlawful search claim.

### D.  Unlawful Detention Claim

Sears alleges his "civil and constitutional rights were violated when he was detained […] despite no evidence of committing a crime and doing nothing to justify reasonable suspicion of criminal activity."[124] To the extent Sears attempts to assert a Fourth Amendment claim for unlawful detention, his claim fails.

"An officer may, consistent with the Fourth Amendment, conduct a brief, investigatory stop when the officer has a reasonable, articulable suspicion that criminal activity is afoot."[125] Ordinarily, "[w]hen an officer asserts qualified immunity, the issue is not whether reasonable suspicion existed in fact, but whether the officer had 'arguable' reasonable suspicion to support an investigatory stop."[126]  But here, a qualified immunity analysis is not necessary because Sears fails to state a claim for unlawful detention.

Trooper Bradley stopped Sears at a constitutionally valid roadblock and lawfully ordered Sears out of his vehicle. In *Pennsylvania v. Mimms*, the Supreme Court held that

---

[123] *Kingsland*, 382 F.3d at 1332 (citing *Riley*, 104 F.3d at 1253 ("It was well established in 1989 that fabricating incriminating evidence violated constitutional rights."); *Hinchman*, 312 F.3d at 205-06 ; *Hill* 884 F.2d at 275).
[124] Pl.'s Amend. Comp. [Doc. 8] at ¶ 36.
[125] *Illinois v. Wardlow*, 528 U.S. 119, 120 (2000) (citing *Terry v. Ohio*, 392 U.S. 1, 30 (1968)).
[126] *Jackson v. Sauls*, 206 F.3d 1156, 1165-66 (11th Cir. 2000).

officers may "order all drivers out of their vehicles as a matter of course whenever they ha[ve] been stopped for a traffic violation."[127] "*Mimms* imposes a per se rule: During a lawful traffic stop, an officer may order the driver out of the vehicle."[128] But in *Rodriguez*, the Supreme Court emphasized that "safety precautions taken in order to facilitate [unrelated] detours" are beyond a traffic stop's lawful scope.[129] Indeed, "the permissible length of a traffic stop is the time 'reasonably required' to complete its core tasks."[130]

Here, one articulated purpose for the roadblock was to perform routine traffic checks for driver impairment.[131] After Trooper Bradley ordered Sears out of his vehicle, Sears consented to a standardized field sobriety test ("SFST") which Trooper Bradley administered.[132] Immediately following the SFST, Trooper Bradley arrested Sears for DUI. Requesting that Sears take a SFST was well within the scope of the roadblock, as it had been authorized to screen for driver impairment. Although defendants have the right to refuse to engage in field sobriety tests, [133]  Sears chose not to exercise that right and consented to the SFST. Because Trooper Bradley lawfully ordered Sears out of his vehicle

---

[127] *Pennsylvania v. Mimms*, 434 U.S. 106, 110 (1977); see also *Maryland v. Wilson*, 519 U.S. 408, 410, (1997).

[128] *Baxter v. Roberts*, 54 F.4th 1241, 1262 (11th Cir. 2022) (citing *Mimms*, 434 U.S. at 111 n.6; *Wilson*, 519 U.S. at 412, 413 n.1 (characterizing *Mimms* as "dr[awing] a bright line" and imposing a "per se rule")).

[129] *Id*. at 1259 (citing *Rodriguez v. United States*, 575 U.S. 348, 356 (2015)).

[130] *Id*.

[131] Roadblock Initiation Form, [Doc. 36-4] at p. 9.

[132] Bradley Declaration, [Doc. 36-3]; Bradley Depo., [Doc. 40] at 37:21-38:4.

[133] *Ammons v. State*, 315 Ga. 149, 158-60 (2022).

and Sears consented to the SFST, Sears' Fourth Amendment unlawful detention claim fails.

E. Malicious Prosecution Claim

"To establish a federal malicious prosecution claim under § 1983, a plaintiff must prove (1) the elements of the common law tort of malicious prosecution, and (2) a violation of her Fourth Amendment right to be free from unreasonable seizures."[134]  "A claim for malicious prosecution under § 1983 and Georgia law requires showing "(1) a criminal prosecution instituted or continued by the present defendant; (2) with malice and without probable cause; (3) that terminated in the plaintiff accused's favor; and (4) caused damage to the plaintiff accused."[135]

"Malicious prosecution 'requires a seizure pursuant to legal process.'"[136]   Here, was no seizure pursuant to legal process. "In the case of a warrantless arrest, the judicial proceeding does not begin until the party is arraigned or indicted."[137]As in *Brienza*, Sears' "arrest cannot serve as the predicate deprivation of liberty because it occurred prior to

---

[134] *Kingsland*, 382 F.3d at 1234 (citing *Wood v. Kesler*, 323 F.3d 872, 881 (11th Cir. 2003)).

[135] *Green v. City of Lawrenceville*, 745 F. App'x 881, 883 (11th Cir. 2018) (citing *Kjellsen v. Mills*, 517 F.3d 1232, 1237 (11th Cir. 2008)).

[136] *Brienza v. City of Peachtree City*, No. 21-12290, 2022 U.S. App. LEXIS 24372, at *21-22 (11th Cir. Aug. 30, 2022) (citing *Williams*, 965 F.3d at 1158).

[137] *Id*. (citing *Kingsland*, 382 F.3d at 1235).

the time of arraignment and was not one that arose from malicious prosecution as opposed to false arrest."[138] Thus, Sears' malicious prosecution claim fails.

## II. First Amendment Claims

Sears contends Trooper Bradley and Sheriff Jarrard established the roadblock to target attendees of the Rainbow Gathering and prevent them from exercising their First Amendment rights of expression and assembly. Additionally, Sears asserts a First Amendment retaliation claim against Bradley. Because Sears cannot demonstrate Sherriff Jarrard participated in the roadblock or that Trooper Bradley's conduct violated his First Amendment rights, his claims fail.

### A. Prior Restraint

"The First Amendment prohibits government from 'abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances.'"[139] "[I]mplicit in the right to engage in activities protected by the First Amendment [is] a corresponding right to associate with others."[140] "A prior restraint on expression exists when the government can deny access

---

[138] *Id.*

[139] *Ams. for Prosperity Found. v. Bonta*, 141 S. Ct. 2373, 2382 (2021).

[140] *Id.* (quoting *Roberts v. United States Jaycees*, 468 U. S. 609, 622 (1984)).

to a forum for expression before the expression occurs."[141] Prior restraints generally occur in the context of licensing or permitting schemes.[142]

Sears cannot demonstrate Sherriff Jarrard imposed a prior restraint on his First Amendment rights. The record demonstrates Sheriff Jarrard played no role in the authorization or execution of the roadblock. The roadblock was authorized by Lt. Coleman,[143] conducted by thirteen GSP troopers, and no other agencies participated in the roadblock.[144] Sheriff Jarrard was not present at the roadblock.[145] No law clearly establishes that simply offering assistance to another agency—while in no way authorizing, supervising, or participating—in a roadblock constitutes an unlawful prior restraint of a plaintiff's First Amendment rights.

Additionally "[i]t is well established in this Circuit that supervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of *respondeat superior* or vicarious liability."[146] "To hold a supervisor liable a plaintiff must show that the supervisor either directly participated in the unconstitutional conduct or that a causal connection exists between the supervisor's actions and the alleged

---

[141] *United States v. Frandsen*, 212 F.3d 1231, 1236-37 (11th Cir. 2000).

[142] *Wright v. City of St. Petersburg*, 833 F.3d 1291, 1298 (11th Cir. 2016).

[143] Roadblock Final Report, [Doc. 36-4] at p. 10.

[144] *Id.*

[145] Jarrard Depo., [Doc. 42] at 40:6-41:4; Roadblock Final Report, [Doc. 36-4] at p. 10; Coleman Depo., [Doc. 41] at 22:18-2, 30:23-37:14.

[146] *Keith v. Dekalb Cty.*, 749 F.3d 1034, 1047 (11th Cir. 2014) (citing *Cottone v. Jenne*, 326 F.3d 1352, 1360 (11th Cir. 2003) (internal quotation marks omitted)).

constitutional violation."[147] "The standard by which a supervisor is held liable in [his] individual capacity for the actions of a subordinate is extremely rigorous."[148] Sears failed to demonstrate that Sheriff Jarrard either directly participated in the unconstitutional conduct or that a causal connection exists between Sheriff Jarrard's actions and the alleged constitutional violation. Therefore, Sheriff Jarrard is entitled to qualified immunity on Sears' prior restraint claim.

Furthermore, the establishment of the roadblock itself did not "deny access to a forum for expression before the expression occurs,"[149] nor did it prevent Sears from attending the Rainbow Gathering. Sears had already attended the gathering and was leaving when he was stopped at the roadblock and arrested.[150] Additionally, as the Court has previously noted, the "First Amendment's prohibition of prior restraint certainly does not restrict the legitimate enforcement of criminal laws."[151] Trooper Bradley stopped Sears at a constitutionally valid roadblock. Bradley played no role in authorizing or selecting the location of the roadblock.[152] Again, no law clearly established that Trooper Bradley's participation in a constitutionally valid roadblock, which did not deny Sears

---

[147] *Id.* at 1047-48.

[148] *Cottone*, 326 F.3d at 1360.

[149] *Frandsen*, 212 F.3d at 1236-37.

[150] Sears Depo., [Doc. 39] at 37:3-38-8.

[151] *2025 Highway, L.L.C. v. Bibb Cty.*, 377 F. Supp. 2d 1310, 1356 (M.D. Ga. 2005).

[152] Coleman Declaration, [Doc. 36-4] at p. 3, 9; *See also Id.* at p. 5, Georgia Department of Public Safety Policy Number 17.16 ("The decision to implement the roadblock shall be made by supervisory personnel in advance rather than by field personnel, including the time and location of the roadblock.); Bradley Depo., [Doc. 40] at 31:7-9.

access to the Rainbow Gathering, constitutes an unlawful prior restraint of Sears' First Amendment rights. Therefore, Trooper Bradley is entitled to qualified immunity on Sears' prior restraint claim.

B. Retaliation

To state a First Amendment retaliation claim, Sears "must establish first, that his speech or act was constitutionally protected; second, that [Bradley's] retaliatory conduct adversely affected the protected speech; and third, that there is a causal connection between the retaliatory actions and the adverse effect on speech."[153] A defendant "adversely affects protected speech if his alleged retaliatory conduct would likely deter a person of ordinary firmness from the exercise of First Amendment rights."[154] Here, Sears has failed to provide sufficient evidence of the third element.

Sears relies solely on his own speculation that the roadblock was established to target Rainbow Gathering attendees.[155] The record contains no evidence—other than Sears' speculation—to establish a causal connection between Trooper Bradley's arrest of Sears and Sears' association with the Rainbow Gathering. In Trooper Bradley's declaration, he states: "I did not arrest Sears because he was an attendee at the Rainbow Gathering; I would have arrested anyone who exhibited the signs of driving under the

---

[153] *Bennett*, 423 F.3d at 1250.

[154] *Bailey v. Wheeler*, 843 F.3d 473, 481 (11th Cir. 2016) (internal quotation marks omitted).

[155] Sears Depo., [Doc. 39] at 103:16-104:16.

34

influence."[156] Evidence in the record does not support Trooper Bradley knew Sears was associated with the Rainbow Gathering. In over forty minutes of video footage provided to the Court, Trooper Bradley never inquired into Sears' association with—or even mentioned—the Rainbow Gathering. Sears admits the same:

> Q: Did Trooper Bradley ask you any questions about your involvement in the Rainbow Gathering during the stop?
>
> A: I don't think so. I think he might have just said, you know, where are you from, what are you -- what are you doing here, that kind of thing, but no, it wasn't any detailed questioning.[157]

Sears failed to produce any credible evidence that Bradley knew of Sears' association with the Rainbow Gathering and arrested him due to his association. Sears' speculation alone is insufficient to establish causation or to create a genuine issue of material fact.[158] Thus, Trooper Bradley is entitled to summary judgment on Sears' First Amendment retaliation claim.

### III. Fourteenth Amendment Claim

Finally, Sears contends Trooper Bradley violated his right to equal protection under the Fourteenth Amendment by targeting Sears due to his affiliation with the Rainbow Gathering and his residence.[159] Specifically, Sears alleges law enforcement stopped

---

[156] Bradley Declaration, [Doc. 36-3] at p. 3.
[157] Sears Depo., [Doc. 39] at 102:21-103:1.
[158] *Chapman v. Am. Cyanamid Co.*, 861 F.2d 1515, 1518 (11th Cir. 1988) ("an inference based on speculation and conjecture is not reasonable.").
[159] Pl.'s Amend. Comp. [Doc. 8] at p. 13.

Rainbow Gathering attendees but either did not stop or quickly released local drivers or drivers not associated with the Rainbow Gathering.

But the evidence in the record conclusively demonstrates all drivers were stopped at the roadblock regardless of their affiliation with the Rainbow Gathering or state of residence. Both Bradley's dash-cam footage and Lt. Coleman's Roadblock Final Report further support the Court's conclusion. The roadblock resulted in the issuance of twenty-three citations, five non-DUI arrests, and two DUI arrests.[160] Sears cites no law supporting his theory of a Fourteenth Amendment violation, and Sears' own testimony contradicts the allegations in his Amended Complaint.

> Q: And how do you know that local residents weren't stopped?
>
> A: Well, I don't know that, but I do know that the -- the way the roadblock was situated, it was to intercept traffic leaving the Chattahoochee National Forest, which is where the gathering was. It -- It was not set up on the main road. It was set up in order to get people leaving the gathering or entering the gathering.
>
> Q: And that's just based on your observation or what you believe?
>
> A: Yes, ma'am.[161]

Furthermore, there is no evidence Trooper Bradley knew of or inquired into Sears' association with the Rainbow Gathering.[162] "To prevail on a 'class of one' equal protection

---

[160] Roadblock Final Report, [Doc. 36-4] at p. 10.
[161] Sears Depo., [Doc. 39] at 70:8-18.
[162] Sears Depo., [Doc. 39] at 102:21-103:1.

claim, Plaintiffs must show they were intentionally treated differently from others who were 'similarly situated' and that there is no rational basis for the difference in treatment."[163] Sears can make no such showing, and his unsupported speculation is wholly insufficient to establish an equal protection claim. Thus, Sears' equal protection claim fails, and Trooper Bradley is entitled to summary judgment.

## CONCLUSION

For the reasons stated above, Trooper Bradley's Motion for Summary Judgment [Doc. 36] is **GRANTED in part** and **DENIED in part**. Specifically, the Court **GRANTS** summary judgment on Sears' unlawful stop, detention, malicious prosecution, First Amendment, and Fourteenth Amendment claims, and **DENIES** summary judgment on Sears' unlawful search and arrest claims. Sherriff Jarrard's Motion for Summary Judgment [Doc. 37] is **GRANTED**.

**SO ORDERED,** this 31st day of March, 2023.

s/ C. Ashley Royal
C. ASHLEY ROYAL, SENIOR JUDGE
UNITED STATES DISTRICT COURT

---

[163] *Grider*, 618 F.3d at 1263-64 (citing *Village of Willowbrook v. Olech*, 528 U.S. 562 (2000); *Griffin Indus. v. Irvin*, 496 F.3d 1189, 1202 (11th Cir. 2007)).